### IN THE UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | | |
|---|---|---|
| **BRANCH BANKING & TRUST** | : | |
| **COMPANY, successor in interest to** | : | |
| **Colonial Bank by asset acquisition** | : | |
| **from the FDIC as Receiver for Colonial** | : | |
| **Bank,** | : | |
| | : | |
| **Plaintiff,** | : | **No. 5:12-CV-314 (CAR)** |
| | : | |
| **v.** | : | |
| | : | |
| **CHERRY-AVANT PLANTATION,** | : | |
| **LLC and J. RUSSELL LIPFORD, JR.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

### ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is a Motion for Summary Judgment [Doc. 21] filed by Plaintiff

Branch Banking and Trust Company, successor in interest to Colonial Bank by asset

acquisition from the Federal Deposit Insurance Corporation as Receiver for Colonial

Bank ("BB&T"). Therein, BB&T seeks summary judgment as to its breach of promissory

note claim against Defendant Cherry-Avant Plantation, LLC ("Cherry-Avant").[1]

Having considered the relevant facts, applicable law, and the parties' filings, BB&T's

---

[1] BB&T also moves for summary judgment as to its breach of Guarantee claim against Defendant J. Russell Lipford. After the instant Motion became ripe, however, Lipford filed a Voluntary Petition for protection under Chapter 7 of the United States Bankruptcy Code, thereby initiating an automatic stay of this case with respect to Lipford under 11 U.S.C. § 361(a). [Docs. 27, 28]. Consequently, BB&T's request for summary judgment as to Lipford is **DENIED without prejudice**. The remainder of this Order will focus solely on BB&T's claim against Cherry-Avant.

Motion [Doc. 21] is **GRANTED in part** as to Defendant Cherry-Avant and **DENIED in part without prejudice** as to Defendant Lipford.

## LEGAL STANDARD

Summary judgment is proper if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitles it to a judgment as a matter of law.[3]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[4]

The Court must view the facts, and any reasonable inferences drawn from those facts, in the light most favorable to the party opposing the motion.[5]  "The inferences, however, must be supported by the record, and a genuine dispute of material fact requires more than 'some metaphysical doubt as to the material facts.'"[6]  In cases where

---

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[3] *Catrett*, 477 U.S. at 323 (internal quotation marks omitted).
[4] *See* Fed. R. Civ. P. 56(e); *see also Catrett*, 477 U.S. at 324-26.
[5] *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010); *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).
[6] *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) (quoting *Penley*, 605 F.3d at 848).

opposing parties tell different versions of the same events, and one is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."[7]  A disputed fact will preclude summary judgment only "if the dispute might affect the outcome of the suit under the governing law."[8] "The court many not resolve any material factual dispute, but must deny the motion and proceed to trial if it finds that such an issue exists."[9]

## BACKGROUND

This is an action for money owed under a promissory note.  The undisputed facts are as follows.  On July 30, 2007, Cherry-Avant executed and delivered a Commercial Promissory Note and Security Agreement (the "Note") to Colonial Bank, N.A. ("Colonial Bank") in the original principal amount of $315,000.00.[10]  On August 14, 2009, over two years later, the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver for Colonial Bank.[11]  The FDIC sold Colonial Bank's assets to BB&T, including, allegedly, the Note and Colonial Bank's interest therein.[12]

---

[7] *Pourmoghani-Esfahani v. Gee*, 625 F.2d 1313, 1315 (11th Cir. 2010) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[8] *Id.* (internal quotation marks omitted).

[9] *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[10] Promissory Note ("Note") [Doc. 21-1]; Rackley Aff. ¶ 4 [Doc. 26-1].

[11] Breier Aff. ¶ 8 [Doc. 21-4].

[12] *Id.*

At some point Cherry-Avant defaulted and failed to repay the Note.[13]   As a result, BB&T declared the full amount of the indebtedness, immediately due and payable, and sent Cherry-Avant notices of acceleration, foreclosure, and of its intent to enforce the Note.[14]   The property was sold at a foreclosure sale, of which the Superior Court of Bibb County, Georgia later confirmed and approved.[15]

On August 2, 2012, BB&T filed the instant deficiency judgment action against Cherry-Avant asserting a claim for breach of the Note.  BB&T alleges that, as of April 16, 2013, Cherry-Avant owes principal on the Note in the amount of $117,094.69; $40,988.46 in interest; $58.55 in interest each day after April 16; additional charges of $1,025.00; and attorneys' fees and costs in the amount of $12,746.42.[16]

After the close of discovery, BB&T filed the instant Motion.  The day after this Motion became ripe for review, Defendant J. Russell Lipford filed for Chapter 7 bankruptcy, thereby staying the proceedings against him.[17]   The pending Motion is therefore ripe with respect to Defendant Cherry-Avant only.

## DISCUSSION

It is undisputed that Defendant Cherry-Avant signed and subsequently defaulted on the Note.  Cherry-Avant also does not dispute that Colonial Bank failed

---

[13] *Id.* at ¶¶ 9, 12.

[14] *Id.* at ¶ 11; Notice of Accel. [Doc. 21-5].

[15] Deed Under Power of Sale [Doc. 21-6]; Breier Aff. ¶ 11; Conf. Order [Doc. 21-7].

[16] Breier Aff. ¶ 13.  As explained below, the total amount of attorneys' fees actually requested by BB&T reflects a miscalculation.  The number quoted above is the correct calculation.

[17] *See* n.1, *supra.*

and that the FDIC took over as its receiver.[18]   What Cherry-Avant does challenge, however, is BB&T's right to collect the deficiency under the Note.  Cherry-Avant asserts that the FDIC, as receiver, did not have the right to enforce the Note and thus could not have assigned actual title of the Note to BB&T.  A creditor in possession of a valid and signed promissory note has a prima facie right of repayment, unless the debtor can establish a valid defense.[19]   Thus, the core inquiry on summary judgment is whether Cherry-Avant challenges whether BB&T is a creditor in possession.

## A.  Creditor in Possession: Assignment of the Note

Cherry-Avant's sole defense in opposition to summary judgment is that BB&T does not have a right to enforce the Note because the FDIC never assigned actual title to BB&T.  Cherry-Avant, however, also states that "if [BB&T] can establish that it has the original Note in its possession, then [Cherry-Avant] will waive [its] defense regarding whether [BB&T] is the holder of the Note and, thus, entitled to enforce it."[20]

In response to Cherry-Avant's invitation, BB&T submitted the testimony of Michelle Rackley, a banking officer and agent of BB&T, who testified that BB&T does have the original Note in its possession.[21]   Because this undisputed evidence

---

[18] *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1992); *Trigo v. FDIC*, 847 F.2d 1499, 1502 (11th Cir. 1988).
[19] O.C.G.A. § 11-3-308(b); *City of Bremen v. Regions Bank*, 274 Ga. 733, 739 (2002).
[20] Resp. Br. [Doc. 24 at 5].
[21] Rackley Aff. ¶ 4.

demonstrates that BB&T is the holder of the original Note, Cherry-Avant waived its defense, and the Court concludes that BB&T is entitled to enforce the Note.[22]

## B. Prima Facie Right to Repayment

Having concluded that BB&T is a creditor in possession, the Court next determines whether BB&T establishes a prima facie right to repayment of the Note. As discussed, a creditor in possession of a valid and signed promissory note has a prima facie right of repayment unless the debtor can establish a valid defense.[23] An admission of indebtedness on a promissory note establishes a prima facie case for recovery and carries a plaintiff's initial burden of showing entitlement to judgment on the note.[24]

Here, Cherry-Avant admits that it executed the Note and that it is now in default as a result of failing to pay monies owed thereunder. Thus, the Court finds that BB&T has established its prima facie case. Because Cherry-Avant waived its only asserted defense to overcome BB&T's prima facie right to repayment on the Note, the Court concludes that BB&T has proven its right to repayment. Accordingly, BB&T's Motion is **GRANTED** as to the deficiency owed by Defendant Cherry-Avant under the Note.

## C. Amounts Owed by Defendant Cherry-Avant

Having determined that Cherry-Avant owes the outstanding debt on the Note, the Court now determines the amount Cherry-Avant owes BB&T. BB&T relies on the

---

[22] *See Heritage Constr. Corp. v. State Bank & Trust Co.*, 2012 WL 1759990, at *2 (Ga. App. May 18, 2012).
[23] O.C.G.A. § 11-3-308(b); *City of Bremen*, 274 Ga. at 739.
[24] *Pollard v. First Nat'l Bank of Albany*, 169 Ga. App. 598, 598 (1984).

affidavit of Amanda Breier, a BB&T banking officer and agent of BB&T, to show that as of April 16, 2013, Cherry-Avant owes $117,094.69 in principal; $40,988.46 in interest; $58.55 in interest each day after April 16; and $1,025.00 for additional charges.  Cherry-Avant does not challenge Breier's affidavit or BB&T's Motion detailing these amounts.

Accordingly, judgment on this portion is proper as to Cherry-Avant, in the amount of:[25]

| | |
|---|---|
| Principal Balance | $117,094.69 |
| Additional Charges | $1,025.00 |
| Interest Accrued through April 16, 2013 | $40,988.46 |
| Interest Accrued from April 17, 2013 to July 23, 2013 (97 days) | $5,679.35 |
| Total | $164,787.50 |


## D.  Attorneys' Fees and Costs

In addition to damages under the terms of the Note, BB&T seeks and is entitled to an award for attorneys' fees.  Pursuant to O.C.G.A. § 13-1-11(a),

> Obligations to pay attorney's fees upon any note of other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity.[26]

---

[25] *See Hovendick v. Presidential Fin. Corp.*, 230 Ga. App. 502, 505 (1998) (granting summary judgment to creditor where defendants "introduced no evidence showing that the amount claimed by [holder] is incorrect and no evidence as to any other amount").
[26] O.C.G.A. § 13-1-11(a).

Here, the Note provides that "[a]ttorney fees shall not exceed 15 percent of the principal and interest owing."[27]  Therefore, BB&T is entitled to an award of attorneys' fees so long as the amount does not exceed 15% of the principal and interest owed.

Attorneys' fees are calculated under a "lodestar" formula by multiplying the number of hours reasonably expended by a reasonable hourly rate.[28]  An attorney's reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."[29]  A reasonable number of hours spent should exclude those hours which are excessive, redundant, or otherwise unnecessary.[30]  The Court "is itself an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."[31]

Here, BB&T seeks $9,626.26 in attorneys' fees for a total of 61.7 hours spent on this case.[32]  Patrick Sefton, counsel for BB&T, submitted an affidavit detailing the hours worked and rates charged while his firm represented BB&T in this action.[33]  The 61.7 hours encompass the work of Sefton, who worked 12.9 hours at $195.00 per hour and

---

[27] Note [Doc. 21-2].
[28] *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).
[29] *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).
[30] *Id*. at 1301.
[31] *Id*. at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).
[32] The total amount actually requested by BB&T, $9,467.10, reflects a miscalculation of the hours and rates attested.  Thus, the total amount cited above and in the appendix reflects the correct total amount of attorneys' fees.
[33] *See* Sefton Aff. [Doc. 21-9].

traveled 3.25 hours at $97.50 per hour, and other unnamed firm attorneys who worked 36.8 hours at $165.00 per hour and traveled 8.75 hours at $82.50 per hour.  Cherry-Avant does not oppose Sefton's affidavit or BB&T's Motion detailing the amount owed.

Having reviewed the hours and rates submitted, the Court finds the amount of hours spent on this case and the hourly rates charged to be reasonable.  The total amount of attorneys' fees does not exceed 15% of the amount owed on the principal and interest.  Thus, BB&T is granted an award of attorneys' fees in the amount of $9,626.26.

In addition to its attorneys' fees, BB&T is entitled to collection costs pursuant to the terms of the Note.[34]  BB&T has submitted a list of transactions detailing the costs derived from this action, including title fees, appraisal fees, filing fees, and service fees, the total of which is $3,120.16.[35]  Again, Cherry-Avant does not challenge Sefton's affidavit or BB&T's Motion detailing the amount owed.  Having considered BB&T's list of transactions, the Court finds these amounts to be reasonable and awards them in full.

## CONCLUSION

In sum, BB&T's Motion for Summary Judgment [Doc. 21] is **GRANTED in part** and **DENIED in part without prejudice**.  BB&T's Motion is **GRANTED** with respect to its claim against Defendant Cherry-Avant, and BB&T is therefore entitled to a deficiency judgment against Cherry-Avant for the unpaid principal, interest, fees, costs of collection, and attorneys' fees.  However, in light of the bankruptcy and automatic

---

[34] *See* Note [Doc. 21-2].
[35] *Id.*

stay currently in place as to Defendant Lipford, BB&T's Motion is **DENIED without prejudice** with respect to its breach of Guarantee claim against Defendant Lipford.

It is **ORDERED** that judgment be and hereby is entered in favor of BB&T and against Cherry-Avant in the amount of (1) $164,787.50 in damages and interest; (2) $9,626.26 in attorneys' fees as calculated in the Appendix to this Order; and (3) $3,120.16 in litigation costs, for a total award of $177,533.92[36]

**SO ORDERED,** this 23rd day of July, 2013.

S/  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

LMH

---

[36] *See Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co.*, 207 F.3d 1247, 1252 (11th Cir. 2000) (stating that court granting award of attorneys' fees should provide a summary table of how it arrived at amount awarded).

**APPENDIX**

**Calculation of Attorneys' Fees**

<u>Sefton</u>

| | |
|---|---|
| Reasonable Hours | 12.9 |
| Reasonable Rate | $195.00 |
| Total Fees | $2,515.50 |

<u>Sefton</u>, Travel

| | |
|---|---|
| Reasonable Hours | 3.25 |
| Reasonable Rate | $97.50 |
| Total Fees | $316.88 |

<u>Unnamed Associates</u>

| | |
|---|---|
| Reasonable Hours | 36.8 |
| Reasonable Rate | $165.00 |
| Total Fees | $6,072.00 |

<u>Unnamed Associates</u>, Travel

| | |
|---|---|
| Reasonable Hours | 8.75 |
| Reasonable Rate | $82.50 |
| Total Fees | $721.88 |

| | |
|---|---|
| Total Attorneys' Fees Awarded: | $9,626.26 |